<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER INNES, | : |
| Plaintiff, | : Civil Action No. 12-234 |
| v. | : OPINION & ORDER |
| SAINT PAUL FIRE and MARINE INSURANCE COMPANY and TRAVELERS COMPANIES, INC., | : |
| Defendants. | : |

**SALAS, DISTRICT JUDGE**

Before the Court are the parties' cross-motions for summary judgment in a declaratory judgment action regarding the scope of an insurance policy issued by Defendant Saint Paul Fire and Marine Insurance Company ("St. Paul"). (D.E. Nos. 64, 65). The Court has considered the parties' submissions and decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants Defendants' motion for summary judgment, (D.E. No. 64), and denies Plaintiff's cross-motion, (D.E. No. 65).

**I.   FACTUAL BACKGROUND[1]**

This is a dispute over insurance coverage for a judgment entered against the law firm of Lesnevich & Marzano-Lesnevich, LLC ("the Firm") and Madeline Marzano-Lesnevich in May

---

[1] The Court takes these facts from the following submissions: D.E. No. 64-2, Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Def. SMF"); D.E. No. 65-3; Plaintiffs' Response to Defendants' Rule 56.1(a) Statement of Undisputed Facts ("Pl. Resp. SMF"); D.E. No. 65-3; Plaintiffs' 56.1(a) Statement of Facts ("Pl. SMF"); and D.E. No. 66-1, Defendants' Rule 56.1 Responsive Statement of Material Facts ("Def. Resp. SMF").

1

2011 in New Jersey state court in Bergen County (the "Underlying Action").  (*See generally* D.E. No. 1-1, Complaint ("Compl.")).

*The Underlying Action and Judgment*

Prior to May 2005, the Firm and Marzano-Lesnevich represented Plaintiff's ex-wife, Maria Jose Carrascosa, in divorce proceedings against Plaintiff.  (Def. SMF ¶ 11; Pl. Resp. SMF ¶ 11).

On January 24, 2006, the Firm and Marzano-Lesnevich received a letter from attorney James Waller stating that he represented Plaintiff "in an action against your Firm."  (Def. SMF ¶ 12; *see also* Pl. Resp. SMF ¶ 12; D.E. No. 64-7, 1/24/06 Ltr.).

Specifically, Waller's letter alleged that, while representing Carrascosa, the Firm gave her the passport of Victoria Innes—Carrascosa and Innes's daughter—"in contravention of the agreement between the parties that the passport would be held by Ms. Carrascosa's attorneys." (1/24/06 Ltr.; *see also* Def. SMF ¶ 12; Pl. Resp. SMF ¶ 12).  The letter further alleges that "Ms. Carrascosa fled the country with the child and Mr. Innes . . . has expended tens of thousands of dollars in legal fees trying to retrieve his daughter."  (1/24/06 Ltr.; *see also* Def. SMF ¶ 12; Pl. Resp. SMF ¶ 12).  It asserts that "[t]his could not have happened if you had retained the child's passport as you were bound to do."  ((1/24/06 Ltr.; *see also* Def. SMF ¶ 12; Pl. Resp. SMF ¶ 12). In addition, the letter instructed the firm to "[p]lease put your carrier on notice."

The Firm responded on January 26, 2006 by letter from Walter Lesnevich (a partner at the Firm) to Waller.  (Def. SMF ¶ 14; Pl. Resp. SMF ¶ 14; D.E. No. 64-7, 1/26/06 Ltr.).  The letter stated that the Firm considered the claim to be "frivolous" and suggested that "[a] letter with a sensible, moderate tone would result in an explanation of what really happened."  (1/26/06 Ltr.; *see also* Pl. Resp. SMF ¶ 14).  It further stated that Lesnevich "will accept service" of any ensuing action. (1/26/06 Ltr.; *see also* Def. SMF ¶ 14; Pl. Resp. SMF ¶ 14).

In June 2006, Plaintiff filed an attorney ethics grievance against Marzano-Lesnevich, "alleging the same misconduct described in the January 2006 letter." (Def. SMF ¶ 15; *see also* Pl. Resp. SMF ¶ 15).

In October 2007, Plaintiff and his daughter, Victoria Innes, filed the Underlying Action against the Firm and Marzano-Lesnevich, again "alleging the same misconduct described in the January 2006 letter." (Def. SMF ¶ 16; *see also* Pl. Resp. SMF ¶ 16). Specifically, the plaintiffs in the Underlying Action alleged that the Firm and Marzano-Lesnevich "had a duty to retain the United States passport of Victoria Innes and that they breached that duty by allowing the child's mother to have the passport." (Pl. SMF ¶ 2; *see also* Def. Resp. SMF ¶ 2).

On November 20, 2007, Lesnevich wrote to the Firm's insurance agent, advising it of the Underlying Action. (Def. SMF ¶ 17; *see also* Pl. Resp. SMF ¶ 17; D.E. No. 64-7, 11/20/07 Ltr.). In his letter, Lesnevich advised the agent that the Firm and Marzano-Lesnevich "do not seek coverage for [the Underlying Action] . . . [and] will defend it ourselves, execute any waiver the carrier wishes, and will be liable for judgment, if any." (11/20/07 Ltr. at 1; *see also* Def. SMF ¶ 17; Pl. SMF ¶ 17). Lesnevich further wrote that the Firm viewed the suit as "ridiculous" and likely to be dismissed. (11/20/07 Ltr.; *see also* Pl. Resp. SMF ¶ 17). He also noted that the Firm had been asked about the circumstances by Mr. Innes's attorney in January 2006, and that it explained that the Firm had nothing to do with it. (11/20/07 Ltr. at 2; *see also* Pl. SMF ¶ 17).

In early December 2007, St. Paul received a copy of Lesnevich's November 20, 2007 letter from the Firm's insurance agent. (Def. SMF ¶ 18; *see also* Pl. Resp. SMF ¶ 18). A St. Paul claim representative then confirmed with Lesnevich via telephone that the Firm did not seek insurance coverage for the underlying action. (*Id.*).

In May 2011, after a ten-day jury trial, the plaintiffs in the Underlying Action were awarded damages and attorneys' fees against the Firm and Marzano-Lesnevich. (Pl. SMF ¶¶ 3-4; *see also* Def. Resp. SMF ¶¶ 3-4). The total amount of the judgment awarded in state court was $1,416,520.93. (Pl. SMF ¶ 4; *see also* Def. Resp. SMF ¶ 4). The judgment is unpaid. (Pl. SMF ¶ 5; *see also* Def. Resp. SMF ¶ 5).

The Firm and Marzano-Lesnevich appealed from the judgment and entered into a "non-execution" agreement with the plaintiffs in the Underlying Action. (Def. SMF ¶ 20; Pl. Resp. SMF ¶ 20). Defendants assert that the Firm and Marzano-Lesnevich "paid a portion of the judgment to Plaintiffs in exchange for the agreement not to execute," but Plaintiff denies that fact. (*Id.*).

### *The St. Paul Insurance Policies*

Defendant St. Paul is an insurance carrier that issued three consecutive lawyers professional liability insurance policies to the Firm (the "Policies"). (Def. SMF ¶ 4; *see also* Pl. Resp. SMF ¶ 4). Defendant Travelers Companies, Inc. ("Travelers") is St. Paul's parent company. (Def. SMF ¶ 5; *see also* Pl. Resp. SMF ¶ 5).

The specific type of policy issued by St. Paul to the Firm is known as a "claims-made and reported" policy. (Def. SMF ¶ 4; *see also* Pl. Resp. SMF ¶ 4). The first policy issued by St. Paul to the Firm had a policy term of October 23, 2006 to October 23, 2007. (*Id.*). Prior to October 23, 2006, St. Paul did not insure the Firm. (Def. SMF ¶ 6; *see also* Pl. Resp. SMF ¶ 6).

Pursuant to the terms of the Policies, the Policies covered the Firm for claims first made during the policy period, subject to all other terms and conditions. (Def. SMF ¶ 7; *see also* Pl. Resp. SMF ¶ 7). Specifically, the Policies included the following language:

> We will pay on behalf of an insured "damages" and "claims expenses" for which "claim" is ***first made*** during the "policy period" and reported to us within the "policy period," any subsequent renewal of the policy or applicable Extended Report period. Such

> "damages must arise out of an error, omission, negligent act or "personal injury" in the rendering of or failure to render "professional legal services" for others by you or on your behalf . . . .

(*Id.*) (emphasis added).

The Policies defined a "claim" as a "demand received by an insured for money or services alleging an error, omission, negligent act or 'personal injury' in the rendering of or failure to render 'professional legal services' for others by you or on your behalf." (Def. SMF ¶ 8; *see also* Pl. Resp. SMF ¶ 8).

In addition, the Policies provided that all claims arising out of the same or related errors "shall be considered ***first made during the 'policy period' in which the earliest 'claims'*** arising out of such same or related errors, omissions, or negligent acts was made." (Def. SMF ¶ 9; *see also* Pl. Resp. SMF ¶ 9) (some emphasis added).

Finally, the Policies stated that it excluded coverage for any claim "[a]rising out of any error, omission, negligent act or 'personal injury' occurring prior to the inception date of this policy if any insured prior to the inception date ***knew or could have reasonably foreseen*** that such error, omission, negligent act or 'personal injury' ***might be expected to be the basis of a 'claim'*** or 'suit.'" (Def. SMF ¶ 10; *see also* Pl. Resp. SMF ¶ 10) (emphases added).

*Present Action and Procedural History*

Plaintiff filed the instant Complaint on October 5, 2011. (Compl.). The Complaint was originally brought in the Superior Court of Bergen County, Law Division, and Defendants removed the action to this Court on January 12, 2012. (D.E. No. 1, Notice of Removal). Plaintiff's daughter, Victoria Innes, was originally named as a Plaintiff in this action, but her claims and the counterclaims against her were voluntarily dismissed with prejudice on December 31, 2014. (D.E. No. 1-1, Complaint ("Compl."); D.E. No. 68, Stipulation of Dismissal). Plaintiff seeks a

declaratory judgment that he is a third-party beneficiary of insurance policies issued by St. Paul to the Firm. (Compl. at 5). Additionally, Plaintiff requests judgment against Defendants in the amount of the state court judgment entered against the Firm and Marzano-Lesnevich. (*Id.*; *see also* Def. SMF ¶ 2; Pl. Resp. SMF ¶ 2). St. Paul counterclaimed, seeking a declaratory judgment that it has no obligation to pay for the state court judgment or defend the Firm or Marzano-Lesnevich. (Def. SMF ¶ 3; *see also* Pl. Resp. SMF ¶ 3; D.E. No. 12, Am. Ans., Aff. Defenses and Countercl. at 7).

The parties previously moved for summary judgment in January 2014. (*See* D.E. Nos. 43, 44). However, during a telephone conference with the Court on July 31, 2014, the parties agreed to administratively stay the case subject to the New Jersey Supreme Court's resolution of the parties' cross-petitions for certification in the Underlying Action. (D.E. No. 55). The Court further ordered that the parties would be permitted to reinstate their pending summary judgment motions following the resolution of the state court petitions. (D.E. No. 58). Accordingly, the Court administratively stayed the case on August 6, 2014. (D.E. No. 59).

On October 30, 2014, Plaintiff's counsel submitted a letter informing the Court that the New Jersey Supreme Court "granted certification on the issue of counsel fees only and left the judgment in favor of Mr. Innes as well as the pre judgment interest due him intact." (D.E. No. 60, 10/30/2014 Ltr. at 2). Accordingly, there is now a final judgment in the amount of $833,815.07 against the Firm and Marzano-Lesnevich, without post-judgment interest or attorneys' fees. (*Id.*). Both parties requested that the Court lift the administrative stay. (*Id.*; *see also* D.E. No. 57).

The Court lifted the administrative stay and re-opened the case on December 10, 2014. (D.E. No. 63). The Parties subsequently refiled their motions for summary judgment. (D.E. Nos. 64, 65).

## II. LEGAL STANDARD

### a. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, a court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. See *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is genuine if a reasonable jury could find in favor of the nonmoving party and it is material only if it bears on an essential element of the plaintiff's claim. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

When deciding a summary judgment motion, a court must view the record and draw all inferences in the light most favorable to the opposing party. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). "This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

### b. New Jersey Law on Interpretation of Insurance Contracts

There is no dispute that New Jersey law governs issues concerning the interpretation and application of the Policies. (D.E. No. 66, Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment ("Def. Opp. Br.") at 8 n.2). Under New Jersey law, interpretation of insurance contract terms is a matter of law for the court to decide. *Duddy v. Gov't Emps. Ins. Co.*, 23 A.3d 436, 438 (N.J. Super.

Ct. App. Div. 2011). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 442 (2010).

In analyzing an insurance policy, the "plain and ordinary meaning" of the terms is controlling. *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). If the language is unclear, however, the ambiguity should be resolved in favor of the insured. *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999). An insurance contract is ambiguous "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lane v. Tishman Const. Corp. of N.J.*, No. L-1846-03, 2007 WL 1062182, at *4 (N.J. Super. Ct. App. Div. Apr. 11, 2007) (quoting *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 247 (1979)). The Court's construction of the policy must also comport with the reasonable expectations of the insured. *Gibson*, 730 A.2d at 1283.

## III.   DISCUSSION

Defendants raise several arguments in support of their motion for summary judgment. First, Defendants argue that there is "no coverage under the Policies for the Underlying Action or judgment" because "Plaintiffs' claim against the Firm and MML was first made *before* the Policies even existed." (D.E. No. 64-1, Defendants' Memorandum in Support of Motion for Summary Judgment ("Def. Mov. Br.") at 1). In particular, Defendants argue that "[b]ecause the Plaintiffs' claim against the Firm and MML was first made more than eight months before the beginning of the first St. Paul Policy, the Policies do not provide coverage for the Underlying Action." (Def. Mov. Br. at 6). Second, Defendants argue that, in any event, Plaintiff's claim is not covered by the Policies because the Firm's principals "knew or could have reasonably foreseen that the alleged misconduct asserted in the January 2006 letter might be expected to be the basis of a claim or suit."

(*Id.* at 2). Third, Defendants argue that the Policies do not cover Plaintiff's claim because the Firm and Marzano-Lesnevich "*specifically waived all rights to coverage for the suit under the Policies*, and agreed to be liable for any judgment entered in the Underlying Action." (*Id.*). Finally, Defendants argue that Travelers, as St. Paul's corporate parent, "can have no liability for the judgment because it did not issue the Policies and has no obligations with respect to Plaintiffs or the Underlying Action." (*Id.*).

Plaintiff responds that the Underlying Action was covered by the Policies and was not subject to any exclusion. (D.E. No. 65-1, Plaintiffs' Joint Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment ("Pl. Cross. Br.") at 12-20). Plaintiff also argues that "New Jersey public policy protects the public from the negligence of uninsured attorneys" and that "allowing the defendant to allow its insured to declaim coverage and then rely on that decision to avoid payment to the plaintiffs is against the Public Policy of the State of New Jersey." (*Id.* at 7).

### a.  Whether the Claim Was Covered by the Policies

To determine whether the claim was covered, the Court begins by considering the plain language of the Policies. *See Flomerfelt*, 202 N.J. at 444 ("In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'") (internal citation omitted). The Policies at issue in this case provide coverage for a "claim" that "is first made during the 'policy period.'" (Def. SMF ¶ 9; Pl. Resp. SMF ¶ 9). A claim is defined as a "demand received by an insured for money or services alleging an error, omission, negligent act or 'personal injury' in the rendering of or failure to render 'professional legal services' for others by you or on your behalf." (Def. SMF ¶ 8; Pl. Resp. SMF ¶ 8). The language of the Policies is unambiguous. The Policies plainly provide coverage if the demand for money or services was

first made to the insured during the policy period. In this case, the Policies cover demands first made to the Firm between October 23, 2006 and October 23, 2007—the policy period. Courts considering similar language in other insurance policies have reached the same conclusion regarding the scope of coverage. *See, e.g.*, *Gladstone v. Westport Ins. Corp.*, No. 10-652, 2011 WL 5825985, at *6 (D.N.J. Nov. 16, 2011) ("The 2008–2009 Policy is a 'claims made and reported' policy. A claim can only be covered if it is presented to the insured during the 2008–2009 Policy's term and reported to the insurer within the term.").

In his cross-motion, Plaintiff argues that Defendants' interpretation of the policy language improperly "restrict[s] the retroactive coverage period" in contravention of public policy. (Pl. Cross Br. at 13). Specifically, Plaintiff relies on *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304 (1985), for its pronouncement that a "claims made policy . . . provide[s] unlimited retroactive coverage." (Pl. Cross. Br. at 12 (quoting *Zuckerman*, 100 N.J. at 310)). Yet Plaintiff misconstrues *Zuckerman* and the concept of "claims made" policies generally. As the New Jersey Supreme Court in *Zuckerman* recognized, "claims made" policies provide unlimited retroactive coverage for *acts* that occurred prior to the policy term, as long as the *claim* made to the insured occurred within the term. *Zuckerman*, 100 N.J. at 310. In fact, the court in *Zuckerman* ultimately held that there are "no considerations of public policy that would inhibit our enforcement of the 'claims made' policy." *Id.* at 321. Accordingly, Plaintiff's reliance on *Zuckerman* is misplaced, and the Court rejects Plaintiff's interpretation of the Policies. In accordance with the plain meaning of the Policies and the relevant case law, the Court determines that the Policies cover claims first made to the insured during the policy period.

Next, the Court turns to whether a claim was first made by the plaintiff in the Underlying Action to the Firm during the policy period. As discussed above, a claim is defined as a "demand

received by an insured for money or services alleging an error, omission, negligent act or 'personal injury' in the rendering of or failure to render 'professional legal services' for others by you or on your behalf." (Def. SMF ¶ 8; Pl. Resp. SMF ¶ 8).

Defendants contend that a claim was made to the Firm and Marzano-Lesnevich on January 24, 2006, when they received a letter from Plaintiff's attorney. (Def. Mov. Br. at 7). Defendants argue that, under the relevant case law, a letter "advising them that he represented Peter [Innes] in an action against the Firm for damages caused by MML's alleged conduct, and requesting the firm to forward the letter to its insurance carrier[] can only be construed as a 'claim' within the Policies' definition of that term." (*Id.* at 8). Plaintiff admits that "the letter does assert that [the Firm] committed an error by releasing Victoria Innes' passport to Maria Jose Carrascosa," but contends that the letter does not constitute a claim because it "does not in any way, shape or form demand the payment of money or seek services" from the Firm. (Pl. Cross. Br. at 15). Plaintiff argues that "[w]ithout an articulation of any demand for money or services, the letter could at best be viewed as a request to discuss Innes' allegations and [the Firm's] response." (*Id.*).[2]

The Court agrees with Defendants that the January 24, 2006 letter constitutes a claim. Several courts in this district and elsewhere have determined that similar letters constitute "claims" under identical or nearly identical policy language despite the fact that they do not contain a verbatim demand for money or services. For example, in *Insite-Properties, Inc. v. Jay Phillips, Inc.*, 638 A.2d 909, 910-12 (N.J. Super. Ct. App. Div. 1994), the Court determined that a letter constituted a claim where it stated as follows: "This letter will serve to inform you that our office represents In-Site Properties, Inc. in reference to damages sustained as the result of your inaccurate

---

[2] Plaintiff also argues that the June 2006 filing of an Ethics Complaint "cannot be viewed as a 'claim,' since it could not seek monetary damages or services from the Firm." (Pl. Cross Br. at 16). Defendants do not appear to dispute this argument.

11

flood certification for the above captioned property." *Insite-Props.*, 638 A.2d at 910-11. Similarly, in *Post v. St. Paul Travelers Insurance Co.*, 691 F.3d 500, 518-19 (3d Cir. 2012), the Third Circuit determined that a claim was made in a letter even though "damages were not explicitly demanded" because the party "asserted its malpractice claim in no uncertain terms." *Post*, 691 F.3d at 518. While *Post* was decided under Pennsylvania law, the language of the "claims" definition was identical to the definition in this case. *See id.*

Here, as in the cases described above, the January 24, 2006 letter stated that Waller represented Plaintiff in an "action" against the Firm and instructed the Firm to place its insurance carrier on notice. (1/26/06 Ltr.). The letter further referenced "tens of thousands of dollars in legal fees" that Plaintiff incurred following the allegedly wrongful actions. (*Id.*). This reference can reasonably construed as a demand to recover that money. As a result, the claim was first made on January 24, 2006, months prior to the initiation of the Policies' term. Therefore, the Court determines that the Policies do not cover the claim because it was first made prior to the Policies' term.

### b. Whether the Claim was Reasonably Foreseeable

Even if the claim was first made during the Policies' term, the Underlying Action still would not be covered by the Policies because the Firm and Marzano-Lesnevich could have reasonably foreseen that certain errors and acts might become the basis of a claim or suit.

Again, the Court begins with the language of the policy. The Policies at issue contain an exclusion stating that claims for acts that occurred prior to the policy period are covered "[p]rovided that the insured had no knowledge of any suit, or any act or error or omission, which might reasonably be expected to result in a claim or suit as of the date of signing the application for this insurance." (Def. SMF ¶ 10; *see also* Pl. Resp. SMF ¶ 10). The language of the exclusion

is clear and unambiguous. The Policies cover acts that occurred before the initiation of the Policies' term unless the insured knew or reasonably should have known that the act could result in a claim or suit.

The Third Circuit has held that New Jersey courts should conduct a mixed subjective-objective analysis in determining whether an insured knew or reasonably should have known that an act could result in a claim or suit. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231 (3d Cir. 2006). In *Colliers*, the Third Circuit considered an exclusion similar to the one in this case, and held that "the plain language of the policy exclusion mandates a *subjective test* for the first part of the necessary inquiry—whether the insured had knowledge of a suit, act, error or omission—and an *objective test* for the second part of the necessary inquiry—whether the suit, act, error or omission might reasonably be expected to result in a claim or suit." *Id.* at 233 (emphases added).

First, the Court determines that the Firm and Marzano-Lesnevich had subjective knowledge of the acts prior to the policy term. The subjective knowledge part of the analysis is satisfied "if the insured had knowledge of the relevant suit, act, error or omission," which "depends on the insured's actual knowledge or subjective awareness." *Id.* at 237. Here, there is no dispute that the Firm received a letter from Plaintiff's attorney on January 24, 2006 stating that the Firm and Marzano-Lesnevich "wrongfully" turned over Victoria Innes's passport to her mother and caused Plaintiff to incur "tens of thousands of dollars in legal fees." (Def. SMF ¶ 12; Pl. Resp. SMF ¶ 12). The Firm received this letter months prior to the initiation of the Policies in October 2006. The Firm and Marzano-Lesnevich were also "clearly aware of these incidents because they were involved in them." *See Navigators Specialty Ins. Co. v. Scarinci & Hollenback, LLC*, No.

09-4317, 2010 WL 1931239, at *15 (D.N.J. May 12, 2010).  As Plaintiff concedes in his brief, "[t]hey gave over the passport to the child's mother at her request."  (Pl. Cross. Br. at 19).[3]

Next, the Court determines that a "reasonable professional in the insured's position might [have] expect[ed] a claim or suit to result."  *See Colliers*, 458 F.3d at 237.  There is ample evidence in the record to support this conclusion.  First, the January 24, 2006 letter specifically states that Waller represents Plaintiff "in an action against your firm" and instructs the Firm to "put your carrier on notice."  (1/24/06 Ltr.).  The Firm indisputably recognized that a suit might be forthcoming, as it responded that "[i]f you want to file a lawsuit, I will accept service."  (1/26/06 Ltr.).  Second, in June 2006, Plaintiff filed an attorney ethics grievance against Marzano-Lesnevich, "alleging the same misconduct described in the January 2006 letter."  (Def. SMF ¶ 14; Pl. Resp. SMF ¶ 14).

Indeed, courts considering similar facts have reached the same result.  For example, the New Jersey Appellate Division recently held that letters sent to an attorney asserting malpractice, seeking a return of attorneys' fees, and threatening to file a complaint put the attorney "on notice and it was reasonable for him to expect at that time that a lawsuit could . . . be filed against him at that particular time."  *Law Offices of Anthony Carbone, P.C. v. Chicago Ins. Co.*, No. 2015 WL 2183989, at *4 (N.J. Sup. Ct. App. Div. May 12, 2015).  Similarly, in *Navigators*, the court held

---

[3] In his opposition brief, Plaintiff emphasizes that the Firm was not aware that the release of Victoria Innes's passport was wrongful, as well as the facts that the Firm repeatedly denied liability and insisted that Plaintiff's claim was "specious." (Pl. Br. at 17-20).  Plaintiff raises this argument with respect to "reasonable foreseeability," but it actually bears on knowledge prong, and so the Court addresses it here. Whether the Firm considered Plaintiff's position to be meritorious is separate from whether the Firm had knowledge of a claim or could have reasonably foreseen a claim or suit. Even if the Firm did not believe that Plaintiff would prevail, it clearly had knowledge of the incidents. (*See, e.g.*, 1/26/06 Ltr.).  The court in *Navigators* addressed this issue, and held that "[a]lthough [d]efendants continuously and vigorously deny the . . . characterizations of these incidents as wrongful . . . Defendants' knowledge of these incidents, rather than their characterization of their culpability in these incidents is the salient factor." *Navigators*, 2010 WL 1931239 at *15.  The same applies here.

that a claim or suit was reasonably foreseeable where counsel "had made several direct accusations of fraud and threats of litigation." 2010 WL 1931239, at *15.

Accordingly, the Court determines that the Policies do not cover Plaintiff's claim because the Firm and Marzano-Lesnevich could have reasonably foreseen that certain errors and acts might become the basis of a claim or suit.

### IV. CONCLUSION

Because the Court determines that the Policies do not cover Plaintiff's claim, it does not address Defendants' additional argument that liability was waived. It also does not address Plaintiff's public policy argument that Defendants should not be allowed to declaim coverage on an otherwise covered claim, since the claim was not covered under the Policies to begin with.

For the foregoing reasons, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

Accordingly, it is on this 11th day of September 2015 hereby

ORDERED that Defendants' motion for summary judgment, (D.E. No. 64), is granted; and it is further

ORDERED that Plaintiff's motion for summary judgment, (D.E. No. 65), is denied; and it is further

ORDERED that the Clerk of the Court shall mark this case closed.

SO ORDERED.

              s/*Esther Salas*
              **Esther Salas, U.S.D.J.**